**ATLANTIC RICHFIELD COMPANY,**
Plaintiff-Appellant,

v.

**OIL, CHEMICAL AND ATOMIC WORK-ERS INTERNATIONAL UNION, AFL-CIO, et al., Defendants-Appellees.**

No. 18263.

United States Court of Appeals,
Seventh Circuit.

Aug. 23, 1971.

Palmer C. Singleton, Jr., Daniel F. Kelly, Joel C. Levy, Steven R. Crist, Hammond, Ind., for plaintiff-appellant; Tinkham, Beckman, Kelly & Singleton, Hammond, Ind., of counsel.

Barbara J. Hillman, Chicago, Ill., John Tadlock, Denver, Colo., Kleiman, Cornfield & Feldman, Chicago, Ill., for defendants-appellees; James J. Cronin, John McKendree, Denver, Colo., of counsel.

Before KILEY, STEVENS and SPRECHER, Circuit Judges.

STEVENS, Circuit Judge.

On November 25, 1969, two employees in appellant's (ARCO's) East Chicago refinery refused to perform assigned work, claiming it to be unsafe. ARCO's Safety Committee determined, without consulting the Union, that no safety problem was involved. The men were again ordered to do the work and again refused. The next day they picketed the main gate and a work stoppage occurred.

On November 28, 1969, the two men were discharged. The work stoppage which had commenced on the morning of November 26, 1969, was still in effect on December 17, 1969, the date on which the district court made the findings of fact which are the basis for this paragraph.

The work stoppage involved about 950 bargaining unit employees. It was a violation of the "No Strike" clause of the parties' Collective Bargaining Agreement. ARCO requested the Union to arbitrate the safety dispute. The Union refused, contending that safety disputes were not arbitrable under the contract, but the court found otherwise.[1] ARCO suffered, and on December 17, 1969, was continuing to suffer, substantial and irreparable damage as a result of the work stoppage.

On December 2, 1969, ARCO filed a four-count complaint against the Union. Count I sought damages from the Union under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; Count II sought damages from certain individuals; Counts III and IV sought equitable relief and raised the issues presented by this appeal.

Count III recited the circumstances of the work stoppage then in progress and, in addition, charged that the Union had "encouraged, aided and abetted and engaged in a pattern of work stoppages and strikes" on five specific occasions.[2] Count III sought to enjoin the Union from breaching the No Strike clause.

The allegations in Count IV related only to the pending strike. In that count ARCO asked for a mandatory injunction to compel the Union to submit the safety dispute to arbitration and to terminate the strike.

1. The court found "that disputes under the safety clause are subject to arbitration under the arbitration clause of the Collective Bargaining Agreement. * * * The grievance and arbitration provisions of the Collective Bargaining Agreement were available to the defendants at all times at their option. No grievance or arbitration could be instituted by the plaintiff under the Collective Bargaining Agreement."

2. The dates as alleged were February 15, 1959, June 13, 1962, October 12, 1967, May 15, 1969, and June 4, 1969.

When the complaint was filed ARCO also filed a motion for a preliminary injunction under Counts III and IV. After hearing ARCO's evidence in support of its motion, the court sustained a motion previously filed by the Union to dismiss Count III and entered an order denying a preliminary injunction under Count IV. No Rule 54(b) findings were requested or entered. ARCO filed its notice of appeal from the orders entered with respect to Counts III and IV[3] on December 31, 1969; thereafter, both the facts and the law were changed.

On February 10, 1970, we were advised by the Union that the strike had been settled and the dispute had been submitted to arbitration. It accordingly moved to dismiss the appeal as moot, and on the additional grounds that the notice of appeal was not timely and the order dismissing less than all the pending counts was not appealable. ARCO opposed the motion but did not contest the facts stated therein.

On June 1, 1970, Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440, upon which the district court had relied in this litigation, was overruled. Boys Markets, Inc. v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199. That development was of special relevance because (a) the Collective Bargaining Agreement under review in the *Sinclair* case contained provisions identical to those involved in this litigation,[4] and (b) in his opinion for the Court in *Boys Markets*, Mr. Justice Brennan expressly adopted the position expressed in his dissent in Sinclair.

Against this background we must decide whether to dismiss the appeal and, if not, whether an injunction should issue.

### I.

We have decided not to dismiss the appeal.

A voluntary cessation of wrongful conduct may eliminate the need for injunctive relief but does not defeat a court's power to act. United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303; Bowater Steamship Co. v. Patterson, 303 F.2d 369 (2nd Cir. 1969); see Walling v. Helmerich & Payne, 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29; Goshen Mfg. Co. v. Myers Mfg. Co., 242 U.S. 202, 207–208, 37 S.Ct. 105, 61 L.Ed. 248. The exercise of that power depends on the court's appraisal of all relevant circumstances, including the threat or likelihood of recurring violations. See United States v. Oregon Medical Society, 343 U.S. 326, 332–334, 72 S.Ct. 690, 96 L.Ed. 978. If past wrongs have been proved, and the possibility of future misconduct survives, so does the court's power. The appeal is not moot.

We are also satisfied that the appeal was timely and that Rule 54(b) findings were not required to make an order denying injunctive relief appealable under 28 U.S.C. § 1292(a)(1). The 10-day requirement on which the Union predicates its timeliness argument is applicable to paragraph (b), not to paragraph (a), of § 1292. The Union correctly points out that in Packard Motor Car Co. v. Gem Mfg. Co., 187 F.2d 65, 66–67 (7th Cir. 1951) cert. granted, 341 U.S. 930, 71 S.Ct. 803, 95 L.Ed. 1360, appeal dismissed per stipulation 342 U.S. 802, 72 S.Ct. 92, 96 L.Ed. 607, we held that Rule 54(b) was applicable to § 1292 as well as § 1291. We have reconsidered this holding in the light of conflicting rulings in other circuits and have decided that a 54(b) certificate is not required when an appeal may be prosecuted as a matter of right pursuant to 28 U.S.C. § 1292(a). See Cutting Room Appliances Corp. v. Empire Cutting Machines Co., 186 F.2d 997, 998 (2nd Cir. 1951); Pang-Tsu Mow v. Republic of China, 201 F.2d 195, 197–198 (D.C.Cir. 1953) cert. denied 345 U.S. 925, 73 S.Ct. 784, 97

---

3. Counts I and II are not before us. The record does not disclose their present status.

4. Atlantic Richfield Company, appellant here, is the successor in interest to Sinclair Refining Co.

L.Ed. 1356; Hook v. Hook & Ackerman, Inc., 213 F.2d 122, 128–129 (3rd Cir. 1954); George P. Converse & Co., Inc. v. Polaroid Corp., 242 F.2d 116, 119–120 (1st Cir. 1957); see also 6 Moore's Federal Practice (2d ed.) ¶ 54.30[2] pp. 232–34. The contrary holding in *Packard* is overruled.[5]

## II.

*Neither party challenged the accuracy of the findings of fact entered on December 17, 1969. As a result of Boys Markets, however, the district court's conclusions of law are now erroneous. We must, therefore, decide whether its denial of equitable relief on Counts III and IV should be affirmed on the basis of the facts now disclosed by the record.*

■ An injunction, though entered on the basis of evidence of past events, is operative in the future. To the extent that relevant facts are properly included in the record, we, therefore, consider them even though they transpired after the entry of the orders being reviewed.

■ There are three elements of ARCO's request for equitable relief. The first two, a discontinuance of the December, 1969, strike and a request for arbitration of the dispute which gave rise to it, plainly do not warrant judicial intervention at this time. The facts at hand indicate that there has been a good faith settlement of these matters. If subsequent events should demonstrate the contrary, neither *res judicata* nor estoppel would foreclose new litigation to vindicate whatever rights ARCO might then properly assert. On the record before us, however, no relief on Count IV would now be appropriate.

■ The issue under Count III is somewhat different because that count alleged a pattern of illegal strikes. Nevertheless, we reach the same result on this count. The Supreme Court has properly reminded us that there are

"weighty considerations" which "counsel restraint on the issuance of strike injunctions." Chicago and North Western Railway Co. v. United Transportation Union, 402 U.S. 570, 91 S.Ct. 1731, 29 L.Ed.2d 187. Moreover, the district court's finding of irreparable injury was predicated on a then pending strike; the court made no finding that the prior stoppages alleged in the complaint were significant. They occurred when *Sinclair*, not *Boys Markets* represented the governing law, and ARCO has not persuaded us that a fair appraisal of the record demonstrates any present threat of recurrence.

As both the law and the facts have changed, we believe this litigation should terminate. If future events should justify renewed litigation, the dismissal of this action would not preclude proof of past history to the extent that it may shed light on the issues then before the court. *Cf.*, United States v. Oregon Medical Society, 343 U.S. 326, 339–340, 72 S.Ct. 690, 96 L.Ed. 978. But that is no reason to keep this case alive.

The judgment is affirmed.

---

5. Since this opinion overrules Packard Motor Car Co. v. Gem Mfg. Co., 187 F.2d 65 (7th Cir. 1951), we have circulated the opinion to the active members of the court not on the panel. A majority of the court has voted not to rehear *en banc* the matter of overruling *Packard.*