Barbara McGILL, Plaintiff-Appellee,

v.

BOARD OF EDUCATION OF PEKIN ELEMENTARY SCHOOL DISTRICT NO. 108 OF TAZEWELL COUNTY, ILLINOIS, et al., Defendants-Appellants.

No. 78–2111.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1979.
Decided July 23, 1979.

V. Rodney Hallberg, Pekin, Ill., for defendants-appellants.

R. W. Deffenbaugh, Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS and SPRECHER, Circuit Judges, and BONSAL, Senior District Judge.*

CUMMINGS, Circuit Judge.

Pursuant to the Civil Rights Act (42 U.S.C. § 1983), plaintiff school teacher sued her employer, the Board of Education, its seven members, a school superintendent and the principal of Broadmoor School in Pekin, Illinois. The gravamen of her complaint was that she was involuntarily transferred to another school in retaliation for certain constitutionally protected speech.

Plaintiff alleged that in March 1977, the Broadmoor School principal informed her that she would be transferred to a different school for the 1977–78 school term because "she had complained about school procedures on a number of occasions, and that she was 'stirring up trouble' in the teachers' lounge." Plaintiff charged that during the 1976–77 school term, she had engaged in discussions with other faculty in the teachers' lounge stating that she favored a master collective bargaining contract and also that she had privately disagreed with some of her principal's decisions and had brought these disagreements to his attention. She further alleged that in April and May 1977 the school superintendent informed her she was being transferred because of "comments that she had made at open meetings of the Defendant Board of Education * * " and also because "she had made references concerning the master [collective bargaining] contract in the teachers' lounge." In August 1977, the Board of Education approved her transfer to a different school. Plaintiff charged that this transfer amounted to a denial of her rights of free speech and association.

In response, the defendants stated that the student population of the Broadmoor School had changed so that it was necessary to reassign plaintiff to another elementary school. Defendants also asserted that the court did not have jurisdiction over the case because no federal statutory or constitutional right was alleged to have been abridged.

In a pretrial ruling, the district court noted that plaintiff had alleged "that the basis for the transfer was comments that she had made at open meetings * * *, and also the fact that she had made remarks concerning the master contract in the teachers' lounge." Judge Morgan held that if plaintiff was transferred "in retaliation for her peaceful expression of opinions outside the classroom," plaintiff would have a cause of action under *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 723, and therefore the case was held for a jury trial. Subsequently the jury returned a verdict in favor of plaintiff, and the district court entered judgment for plaintiff reinstating her to her teaching position at the Broadmoor School and awarding plaintiff costs.[1] We affirm.

*The Jury Properly Found That Plaintiff Was Transferred For Protected Conduct*

■ Defendants first argue that plaintiff did not prove that her communications were entitled to First Amendment protection in view of *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811, and *Clark v. Holmes*, 474 F.2d 928 (7th Cir. 1972), certiorari denied, 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695. *Pickering* held that school teachers may not constitutionally be compelled to relinquish their First Amendment rights "to comment on matters of public interest in connection with the operation of the public schools * * *." 391 U.S. 568, 88 S.Ct. at 1734. The Court applied the First Amendment to the teacher's statements critical of his employer "which are neither shown nor can be presumed to have in any way either impeded

---

* The Honorable Dudley B. Bonsal, Senior District Judge of the Southern District of New York, is sitting by designation.

1. The record does not reveal that plaintiff recovered attorneys' fees, as requested in her complaint. Since the district court's judgment granted her "the relief prayed for in the complaint" (R. 16), perhaps the fixing of attorneys' fees was awaiting the outcome of this appeal.

the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally" (footnote omitted). 391 U.S. at 572, 573, 88 S.Ct. at 1737. Thus *Pickering* can be read as establishing that two limits on a teacher's right to speak out may be permissible. First, speech that is so disruptive as to impede the teacher's performance or to interfere with the operation of the school may be proper grounds for discipline. Second, if the speech does not involve matters of public interest it may not be entitled to constitutional protection.

In the present case defendants have not shown that plaintiff's statements impeded her classroom duties or interfered with the regular operation of the schools generally. Although defendants adduced some evidence tending to show that plaintiff was a source of friction and lack of cooperation among the teachers, plaintiff rebutted that evidence with testimony from the relevant teachers that such tension did not exist and that plaintiff was a respected and valued colleague.[2] The jury was instructed that the teacher's criticism would not be protected if "the teacher's actions materially and substantially interfere with the operation of the education process in the classroom" (Tr. 209).[3] Clearly the jury made a credibility determination in this regard, and we cannot

disturb it. Consequently, because plaintiff has established that her speech was not unduly disruptive, *Pickering* does not support defendants' position.

*Clark v. Holmes, supra,* does not require reversal either, because there the disruptive nature of the plaintiff's speech was plainly established. Teacher Clark's statements consisted of "uncontrolled expression at variance with established curricular contents and internally destructive of the proper functioning of the [university] institution" (474 F.2d at 931).[4] Instead this case is controlled by *Donahue v. Staunton,* 471 F.2d 475, 480 (7th Cir. 1972), certiorari denied, 410 U.S. 955, 93 S.Ct. 1419, 35 L.Ed.2d 687. There we observed that public employees do have a right to criticize their employers because dismissal from their employment for making critical statements would "inhibit the propensity of a citizen to exercise his right to freedom of speech and association."[5] In *Donahue* we held that defendants could not dismiss a hospital chaplain even though his accusations were extensive, critical, vociferous and exaggerated and even false. Judge Hastings' majority opinion supported this result because the defendants did not show that plaintiff's accusations impeded the performance of his duties or interfered with the functioning of the hospital.

2. Defendants also sought to establish that friction between Principal Hamra and plaintiff affected the operation of the school. In this regard they sought to demonstrate such tension by relying upon the fact that in May 1977 plaintiff requested of Superintendent Caringello that someone other than Mr. Hamra should complete her end-of-year evaluation. This request came after Mr. Hamra had told plaintiff he was recommending that she be involuntarily transferred and his reasons for requesting the transfer, and after plaintiff had made clear her intention to resist the transfer. The jury was certainly entitled to conclude that this request did not demonstrate that serious personal friction between plaintiff and Mr. Hamra had motivated the transfer decision.

3. The jury was also instructed that "the burden is on the plaintiff to establish that the transfer is based on the exercise of protected Constitutional rights" (Tr. 204).

4. In addition, defendants relied on *Roseman v. Indiana University of Pennsylvania,* 520 F.2d 1364 (3d Cir. 1975). In *Roseman,* the plaintiff

professor erroneously complained to the college dean about the foreign language department's acting chairman, alleging that he wrongfully suppressed a colleague's application for the chairmanship of the department. Since Roseman's attack on the acting chairman interfered with the harmonious relationship with her superiors and co-workers, her statements were deemed to be outside the First Amendment protection. In contrast, McGill's statements were not shown to have had such a disruptive impact. The *Roseman* court also held that the statements were not protected because they were made privately rather than publicly. That aspect of the case has been overruled by *Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619, discussed *infra.*

5. This quotation in *Donahue* was taken from *Kiiskila v. Nicholls,* 433 F.2d 745, 749 (7th Cir. 1970).

Defendants also urge plaintiff's statements were not protected by the First Amendment because they involved only matters of private concern.[6] However, her complaint alleges that the reason for her transfer was advocacy of a collective bargaining agreement in the teachers' lounge and in an open meeting of the school board. Judge Morgan evidently concluded that this speech involved a matter of public concern, and we agree. The jury was instructed as follows (court's Instruction No. 7; defendants' Instruction No. 23):

> "Plaintiff has the burden of proving the following propositions as to each defendant:
>
> "First, that plaintiff has made remarks at open meetings and in the teachers' lounge concerning the teachers' master contract.
>
> "Second, the transfer to another school was made as a result of the aforementioned comments.
>
> "If you find that both of the aforementioned propositions have been proven, then your verdict should be for the plaintiff; but if, on the other hand, you find that either of the propositions has not been proved, then your verdict should be for the defendants." (Tr. 204.)

Plaintiff had unsuccessfully objected to this instruction of defendants because it was limited to plaintiff's remarks concerning the teachers' master contract (Tr. 213–214). Consequently, it is apparent that the district judge agreed with defendants that the only comments by plaintiff which were protected by the First Amendment were her remarks in the teachers' lounge and at the open meeting in favor of a master collective bargaining contract. Such a subject is, of course, of public concern, so that defendants may not complain that the jury was permitted to decide in plaintiff's favor with respect to any of her comments on private issues. The jury instruction quoted above precluded any such decision.

Finally, *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619, punctures defendants' insistence that plaintiff's speech was not protected by the First Amendment to the extent that some otherwise protected comments were made privately. In *Givhan*, the plaintiff teacher's comments to her school principal consisted of insulting, hostile, loud and arrogant, petty and unreasonable demands, according to the defending school district. Her complaints involved employment policies and practices at the school which she conceived to be racially discriminatory in purpose or effect. However, the Supreme Court considered her private comments and expressions of opinions to the principal to be protected under the First Amendment. It reiterated its *Pickering* view that the content of the teacher's statements would be protected if, as here, they did not impede the proper performance of his daily duties in the classroom or interfere with the regular operation of the schools generally (439 U.S. 415 n.4, 99 S.Ct. 696), but the case was remanded so that the district court could decide whether Givhan would have been rehired but for her criticism.

We therefore conclude that plaintiff's advocacy of a collective bargaining contract was protected by the First Amendment and that the jury's consideration was properly limited to this constitutionally protected speech.

### Instruction No. 20 Was Not Erroneous

[3] The court's Instruction No. 20 (derived from plaintiff's Instruction No. 3) provided as follows:

---

6. In this regard defendants rely on *Schmidt v. Fremont County School District*, 558 F.2d 982 (10th Cir. 1977). However, in *Schmidt*, the trial court found that the reason for the non-renewal of the plaintiff's contract was not retaliation for protected speech, but failure to improve the attendance record and other inadequacies in his performance. The Tenth Circuit, affirming, added that in any event the speech at issue did not involve questions of public concern, but only differences of opinion between the principal and the school board over how the school should be run. In the present case, the relevant speech does not involve policy differences between plaintiff and her superiors, but advocacy of a collective bargaining agreement, which is clearly a matter of public concern.

"A government entity, such as a school district, does not have a right to transfer an employee because the employee has engaged in speech which has no bearing on proper performance of the employee's assigned duties. This is because to permit such could have a chilling effect upon exercise of the employee's right to freedom of speech as guaranteed by the Constitution of the United States.

"This does not mean, however, that any person who speaks critically of the employer or supervisor is, thereafter, insulated against transfer. The test must be whether the protected speech was, or was not, the motivating factor in making an otherwise completely legitimate transfer.

"That is the question for you to decide in this case—whether Barbara McGill was transferred because of her speech or for other legitimate reason. Would she have been the one transferred if she had not spoken as she did." (Tr. 210.)

Defendants' only objection to this instruction was to the final sentence. They objected on the ground that it "tends to emphasize the plaintiff's theory of the case" (Tr. 214–215). Apparently defendants' position is that pursuant to this instruction the jury could have found for the plaintiff on the basis of purely private, unprotected complaints which were also in evidence. However, Instruction No. 20 was proper because the protected speech was already defined in the court's Instruction No. 7 (which was defendants' Instruction No. 23 and is reproduced *supra*) as consisting of plaintiff's remarks in the teachers' lounge and at open meetings concerning the teachers' master collective bargaining contract (Tr. 204). As seen, Judge Morgan also told the jury that the teacher's right to criticize is lost when the teacher's actions materially and substantially interfere with the educational process in the classroom (Tr. 209) and that protected speech must have "no bearing on proper performance of the employee's as-

signed duties" (Tr. 210). Furthermore, the jury was told that "the defendants  *  *  *  had every right to transfer her for a legitimate reason" (Tr. 207).[7] Defendants did not tender an instruction requiring the jury specifically to balance the teacher's interest in commenting on matters of public concern with the interests of the defendants in promoting the efficiency of the educational services they render. Construing the instructions as a whole, the jury could not decide for plaintiff unless it found that her constitutionally protected speech was the motivating factor in defendants' decision to transfer her.

This test has consistently been applied by the Supreme Court. *Pickering v. Board of Education, supra*, 391 U.S. at 574, 88 S.Ct. 1731 (protected speech may not "furnish the basis" for dismissal); *Mt. Healthy v. Doyle*, 429 U.S. 274, 285–287, 97 S.Ct. 568, 50 L.Ed.2d 471 (question is whether the discharge would have occurred even in the absence of the protected conduct). In its most recent relevant opinion, *Givhan v. Western Line Consolidated School District, supra*, the Supreme Court also held that for the dismissed teacher to be reinstated the protected speech must be the motivating factor in discharging her. The instruction here that plaintiff could only recover if she showed that her protected speech was the motivating factor in the transfer is equivalent to the *Givhan* test that the teacher could only recover if the jury found that she would have been left in the former position "but for the criticism." [8]

Since whether protected speech was the "motivating factor" for the adverse action is a correct standard, and since the jury was correctly instructed as to what constituted protected speech, defendants' objections to Instruction No. 20 must fail.

### A Retaliatory Transfer Can Trigger First Amendment Rights

■ Defendants contend that the principles developed in *Pickering* and *Givhan*,

---

7. The district court quoted at length from the Illinois statutes vesting authority to employ and transfer teachers in the school board and the superintendent.

8. At oral argument, counsel for defendants conceded that plaintiff's speech was a factor involved in her transfer.

both *supra*, do not apply here because plaintiff was not discharged but merely transferred to another school within the district with no loss of pay, seniority or other rights. Furthermore, according to defendants, "[f]rom a practical standpoint her right to comment on a master contract is preserved" (Br. 19). However, plaintiff specifically alleged that her involuntary transfer was discriminatory and in retaliation for her constitutionally protected speech. The question is not, as in a procedural due process case, whether plaintiff had a protected property interest in her position at any particular school. Clearly she did not. Rather, the question is whether the defendants unconstitutionally retaliated against the plaintiff on account of her protected speech.

We hold that such retaliation can take the form of a retaliatory transfer as well as a retaliatory discharge.[9] It is no answer to say that she had a right to engage in the constitutionally protected speech after her transfer, since even a discharged teacher has the right to continue to speak out.[10] The test is whether the adverse action taken by the defendants is likely to chill the exercise of constitutionally protected speech. *Pickering v. Board of Education, supra*, 391 U.S. at 574, 88 S.Ct. 1731. This chilling effect can be accomplished through an unwanted transfer as well as through outright discharge.

In this case the school from which plaintiff was transferred was brand-new and the only school in the district operating on an "open classroom" plan. It is unclear whether plaintiff's objections to the transfer stemmed from her perceptions of the professional advantages at the Broadmoor School or from more personal concerns. It seems clear, however, that the threat of transfer—whether it be to a school with a less desirable reputation or one perceived as dangerous or one that is difficult to get to—could be an effective means of chilling constitutionally protected speech.

### The Jury Verdict Was Supported By A Preponderance Of The Evidence

 In its opening statement to the jury, the district court charged that the plaintiff must prove her contention by a preponderance of the evidence in order to recover. Here the crucial evidence is whether plaintiff's comments concerning the master collective bargaining contract were the motivating factor in her transfer. The evidence shows that plaintiff discussed the need for a master contract in the teachers' lounge and that at a later board meeting she said how important it was to have such matters reduced to writing. She was told by the principal and the superintendent that this advocacy was the reason for her transfer. One of the board members, Jenny McDonald, testified that when the transfer of plaintiff came up at a board meeting, defendant Principal Hamra complained to the board that plaintiff had talked in the teachers' lounge. Likewise, there was testimony that plaintiff was not making the other teachers upset, that she was highly qualified, and that there were no complaints about the way she conducted her class. Therefore, there was substantial evidence for the jury to conclude that the plaintiff would not have been transferred but for her protected conduct.

Judgment affirmed.

---

9. *Simpson v. Weeks*, 570 F.2d 240 (8th Cir. 1978), certiorari denied, —— U.S. ——, 99 S.Ct. 3101, 61 L.Ed.2d 876, supports this conclusion. In *Simpson* a policeman who suffered a discriminatory reassignment and negative evaluations in retaliation for constitutionally protected speech recovered under 42 U.S.C. § 1983.

10. It is true that because plaintiff would continue to have a stake in the school system and daily contact with other teachers, her forum for engaging in the protected speech at issue would be somewhat less impaired than is usually the case when a public employee is discharged. However, the key question is whether the retaliatory action is likely to dissuade this and other employees from speaking out on public issues, not whether they continue to have a theoretically available forum for doing so.