John GANNON, et al., Plaintiffs,

v.

Richard M. DALEY, et al., Defendants.

Nos. 81 C 1512, 81 C 2127, 81 C 2128 and 81 C 3519.

United States District Court, N. D. Illinois, E. D.

Oct. 19, 1981.

Robert V. Boharic and Edward R. Theobald, Boharic & Theobald, Chicago, Ill., for plaintiff.

John R. Schmidt, David N. Carvalho, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MARSHALL, District Judge.

Plaintiffs have brought these consolidated actions under 42 U.S.C. § 1983 (1976) alleging that defendants deprived plaintiffs of their constitutional rights when defendants dismissed plaintiffs as employees of the State's Attorney for Cook County, Illinois. Defendants are State's Attorney Richard M. Daley and his First Assistant, Richard Devine, and the County of Cook. This court has jurisdiction under 28 U.S.C. § 1343(3) (1976).

In 81 C 1512, plaintiff John Gannon alleges that he was first demoted from supervisor of clerical personnel in the State's Attorney's office to file clerk, and then dismissed, solely because of his political affiliation. Mr. Gannon alleges that he is a registered Republican, and that his dismissal was the result of a patronage system implemented by State's Attorney Daley, who is a Democrat, subsequent to Daley's election as State's Attorney, in violation of the first amendment.

In 81 C 2127, plaintiff Victoria Sierra alleges that she supported the re-election of the Republican State's Attorney, Bernard Carey, who was defeated by defendant Daley. She alleges that she was dismissed by defendants from her position as an administrative assistant in the State's Attorney's office solely because she had supported Mr. Carey, in violation of her first amendment rights.

In 81 C 2128 and 81 C 3519, plaintiffs Wesley Spraggins and Oscar Nieves make allegations similar to those made by Ms. Sierra with respect to their dismissal as an administrative assistant in the State's Attorney's office.

Defendants have moved to dismiss the complaints on the ground that the claims plaintiffs assert are precluded by a final consent judgment entered on April 3, 1978, and amended on January 20, 1981, in *Shakman v. Democratic Organization of Cook County*, No. 69 C 2145 (N.D.Ill.). The *Shakman* case involved allegations that the constitutional rights of voters and candidates in Cook County had been violated by a systematic use of patronage to discourage political opposition to the Regular Democratic Organization in Cook County.[1] In

---

1. In *Shakman*, plaintiffs also alleged that their rights as taxpayers were infringed by the patronage system. However, the court held that plaintiffs lacked standing to make that claim,

that case, Judge Nicholas Bua of this court held that the challenged practices violated the first and fourteenth amendment rights of the plaintiff class of candidates and voters. *See Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315 (N.D. Ill.1979). A consent judgment was entered on April 3, 1978, which enjoined the firing of employees on political grounds from portions of the State's Attorney's office. On January 20, 1981, a further consent judgment was entered which enjoined political hiring and established which positions in the office were exempt from the court's holding.

The 1981 judgment permits political firings from the exempt positions. Plaintiffs occupied exempt positions, and therefore their dismissal, even if done on purely political grounds as retaliation for the exercise of first amendment rights, is permitted under the 1981 judgment.

Defendants argue that the 1981 judgment precludes plaintiffs from pursuing their claims in this action. They point out that plaintiffs are concededly members of the plaintiff class of voters in *Shakman*, and therefore are bound by the court's judgment in that case.

█ In order to assess defendants' position, it is necessary to analyze the preclusive effects of the *Shakman* judgment under the doctrines of res judicata and collateral estoppel. The parties have not always indicated upon which doctrine they rely. The difference between res judicata and collateral estoppel is essentially the difference between preclusion of claims and issues. A given judgment will have two kinds of preclusive effects. Res judicata precludes the same claim or cause of action from being asserted in subsequent litigation between the parties, while collateral estoppel precludes relitigation of those issues which were adjudicated in the earlier judgment when raised in a different cause of action between the parties. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Lawlor v. National*

*Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955).

█ Under res judicata or claim preclusion, a prior judgment will bar the identical cause of action from being relitigated. *Harper Plastics, Inc. v. Amoco Chemical Corp.*, 657 F.2d 939, 945 (7th Cir. 1981). Under res judicata "the judgment operates as a bar, prevents relitigation of all grounds for, or defenses to, recovery that were then available to the parties before the particular court rendering the judgment, in relation to the same claim—regardless of whether all grounds for recovery or defenses were judicially determined." 1B J. Moore & T. Currier, Moore's Federal Practice § 0.405 at 622 (2d ed. 1980). Res judicata applies to more than simply those issues which were litigated and adjudicated in the prior case. It operates to bar all claims which might have been made by the parties in the earlier case. *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1949); *Morris v. Jones*, 329 U.S. 545, 552, 67 S.Ct. 451, 456, 91 L.Ed. 488 (1947); *Harper Plastics, Inc. v. Amoco Chemicals Corp., supra* at 7–8; *Murphy v. Landsburg*, 490 F.2d 319, 322 (3d Cir. 1973), *cert. denied*, 416 U.S. 939, 94 S.Ct. 1941, 40 L.Ed.2d 289 (1974). However, res judicata does not preclude separate or different claims from being brought. *FSLIC v. Szarabajka*, 330 F.Supp. 1202, 1207 (N.D.Ill. 1971).

█ The pivotal question in this case is whether the claim plaintiffs present is part of the same cause of action that was asserted in *Shakman*. If plaintiffs' claim is one that could have been litigated in Shakman, then it is precluded by the 1981 judgment. Here plaintiffs assert a first amendment right not to be fired for political reasons. *See generally Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). A careful examination of *Shakman* reveals that this claim was not, and could not have been presented there.

and therefore entered summary judgment for defendants on it. *See Shakman v. Democratic*

*Organization of Cook County*, 481 F.Supp. 1315, 1322 n. 1 (N.D.Ill.1979).

*Shakman* did not involve claims by governmental employees regarding unconstitutional hirings and firings. The Seventh Circuit observed, "[p]laintiffs are asserting that the practice causes injury to their interests as candidates and voters. . . ." *Shakman v. Democratic Organization of Cook County*, 435 F.2d 267, 269 (7th Cir. 1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971). Plaintiffs in *Shakman* asserted that the patronage system practiced by defendants interfered with the rights of Cook County candidates and voters to participate in fair and nondiscriminatory elections. *See* 481 F.Supp. at 1344–49. *See also id.* at 1355 ("The court holds that the plaintiffs have a right to an electoral process free from deliberate governmental discrimination against their views."). Liability in *Shakman* was predicated not on the rights of governmental employees not to be fired in retaliation for their political beliefs and activities, but rather on the rights of candidates and voters to be free of a patronage system which undermined the fairness of the electoral process in Cook County. The cause of action in *Shakman* involved the effect of the patronage system on elections in Cook County. Here a much different set of issues and facts must be litigated. To decide this case, this court need not allow relitigation of the effect of patronage on the electoral process. It need only determine whether plaintiffs were fired for impermissible reasons. A much different cause of action is presented than the claim made in *Shakman.*

Not only was this cause of action not presented in *Shakman,* but it could not have been presented by the plaintiffs in that case even had they wished to assert it. The *Shakman* plaintiffs, as voters and candidates, lacked standing to assert the rights of public employees which are at issue here. *Shakman* plaintiffs were not allowed to assert their own rights and not those claims held by public employees. *See* 481 F.Supp. at 1324 n. 3. Judge Bua clearly held that no claim could be presented on behalf of the public employees in Cook County to be free of unconstitutional hirings and firings:

The plaintiff class in this case was not certified as a class of government employees or applicants for government jobs. There has been no showing that the plaintiffs represent such government employees and applicants, or that the employees and applicants are for some reason unable or unlikely to bring suit themselves. Accordingly, the court must conclude that the plaintiffs are not proper parties for a challenge of patronage hiring and promotion practices as they affect employees and applicants. Instead, the defendants' conduct must be analyzed solely under the Seventh Circuit's decision in *Shakman* and other applicable court decisions interpreting the rights of candidates and voters. *Id.* at 1329 (footnote omitted).

In short, *Shakman* involved a class which was incapable of litigating the rights of employees to be free of unconstitutional hirings and firings.

We may assume that defendants are correct when they suggest that the legal standard applied in *Shakman* is identical to the standard that should be employed to adjudicate these cases. However, all that proves is that *Shakman* may be a highly persuasive precedent because of its similarity to this case. If the cause of action asserted in this case could not have been litigated in *Shakman,* then it cannot be precluded by *Shakman.* Judge Bua's opinion makes it clear that he did not permit the *Shakman* plaintiffs to assert the cause of action which governmental employees have against discriminatory firings. This is made clearer by an order entered by Judge Bua in *Shakman,* in which he denied the motion of an Illinois Special Assistant Attorney General to modify the decree in order to protect the rights of public employees under *Branti v. Finkel, supra.*

In arguing that *Branti v. Finkel* mandates modification of the July 16, 1976 Consent Judgment, petitioner Howarter misconstrues the First Amendment interests involved in the *Shakman* cause. The plaintiff class in *Shakman* is composed of independent candidates for elective of-

fice, and voter-taxpayers in the Northern District of Illinois. At issue in that lawsuit is whether the patronage practices of the various defendants operated to deny the candidate-plaintiffs their Constitutionally protected right to an equal chance for election, and the voter-plaintiffs their Constitutional right to a reasonably equal voice in the electoral process. The First Amendment rights of public employees, however, to the contrary of what petitioner Howarter appears to be contending, have never been directly at issue in *Shakman*. *Shakman v. Democratic Organization of Cook County*, No. 69 C 2145, slip op. at 2 (N.D.Ill. Mar. 3, 1981).

As a result, the court held that the claim presented by the public employee to be free from discriminatory firing could not be presented in the *Shakman* litigation. Instead, Judge Bua held that such a claim must be presented in a separate case brought under § 1983, *see id.* at 4, which is exactly what plaintiffs have done here. Because the claims plaintiffs assert here could not have been presented there *Shakman* does not operate as res judicata to preclude plaintiffs' claim in this action.

■ Collateral estoppel, unlike res judicata, only precludes issues which have been previously adjudicated, but does so whether or not they arise in the same cause of action. For collateral estoppel to operate, plaintiffs must seek to relitigate an issue identical to one which was adjudicated in a prior case. *Haung Tang v. Aetna Life Insurance Co.*, 523 F.2d 811, 813 (9th Cir. 1975); *Brubaker v. King*, 505 F.2d 534, 538 (7th Cir. 1974). What has been said above regarding res judicata also explains why collateral estoppel does not bar plaintiffs' claims. The issue decided in *Shakman* was whether the patronage system unconstitutionally infringed the rights of voters and candidates to free and fair elections. The issue presented in this case does not require

relitigation of the effect of patronage on elections. The issue here is merely whether these plaintiffs were fired for unconstitutional reasons. Plaintiffs' own associational rights, and not the integrity of the electoral process, are at stake. Since the associational rights of employees were not adjudicated in *Shakman*, they are not precluded by collateral estoppel, under the general rule that issues not litigated in prior cases between the same parties are not barred by collateral estoppel. *Stolberg v. Members of the Board of Trustees for the State Colleges*, 541 F.2d 890 (2d Cir.), *cert. denied*, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 181 (1976).

In this case, plaintiffs present a set of claims not at issue in *Shakman*.[2] The rights of public employees not to be fired, and the effect of the patronage system on those employees, was not litigated in *Shakman*, nor could it have been. To use the test employed by Judge Wood, writing for the Seventh Circuit, the determination as to whether two suits involve a common claim is "whether the right and duty and the wrong complained of are the same in both actions." *Harper Plastics, supra* at 7. Here, very different rights and duties are present than were at issue in *Shakman*. When a claim arises which could not have been litigated in a prior action, neither res judicata nor collateral estoppel bars it. *Hopewell Township Citizens I–95 Committee v. Volpe*, 482 F.2d 376, 380–81 (3d Cir. 1973); *Atlantic Richfield Co. v. Oil Chemical & Atomic Workers International Union*, 447 F.2d 945, 948 (7th Cir. 1971).

Defendants correctly argue that because plaintiffs were members of the *Shakman* class as voters, they are bound as voters by that judgment. However, claims which plaintiffs as employees could not have raised in that class action are not barred by it in this subsequent litigation. *See Sullivan v. Chase Investment Services of Boston, Inc.*, 79 F.R.D. 246, 256 (W.D.Cal.1978). Plaintiffs could not have asserted their rights as employees in *Shakman*. *See Or-*

**2.** "That both suits involve [ ] 'essentially the same course of wrongful conduct' is not decisive. Such a course of conduct—for example, an abatable nuisance—may frequently give rise

to more than a single cause of action." *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 327–28, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955) (footnote omitted).

der of March 3, 1981 in 69 C 2145, *supra*. Accordingly, *Shakman* does not preclude them from asserting those rights in the instant action.

The present action is akin to *Crowe v. Leeke*, 550 F.2d 184 (4th Cir. 1977). There, plaintiffs were the class of inmates at a correctional facility. They challenged the defendants' practice of opening mail addressed to plaintiffs by their attorneys outside of plaintiffs' presence. An earlier class action involving the same plaintiff class had upheld the defendants' mail censorship regulations. However, since the first action had not involved a claim regarding the inmates' right to be present at the opening of attorneys' mail, the first action did not operate as res judicata or collateral estoppel to the second action. Similarly, this action involves different rights and facts than those in *Shakman*. Thus, *Shakman* does not preclude this action; it operates as stare decisis only.[3]

The motion to dismiss is denied. Defendants are ordered to answer within 14 days.

---

**3.** As defendants argue, there may be strong policy reasons to ultimately apply the *Shakman* decree to this case, in order to avoid subjecting defendants to inconsistent decrees regarding their employment practices. However, that means only that *Shakman* is a particularly powerful precedent. The fact that there are compelling reasons to follow a particular precedent does not, in itself, convert that precedent into either res judicata or collateral estoppel.