**John AURIEMMA, Daniel Coll, Marshall Considine, Renaldo Cozzi, Kenneth Curin, Russell Ditusa, Thomas Farragoi, Lawrence Forberg, John Hinchy, Kathryn Kajari, George Marcin, Patrick McDonough, Walter Murphy, John Rafter, Dominic Rizzi, James Stampnick, Thomas Walton and Roger Whalen, Plaintiffs,**

v.

**CITY OF CHICAGO, Harold Washington, Chicago Police Department and Fred Rice, Defendants.**

No. 84 C 1224.

United States District Court, N.D. Illinois, E.D.

Oct. 23, 1984.

John L. Gubbins, Chicago, Ill., for plaintiffs.

Langdon Neal, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

This action, like many brought in recent years, challenges an alleged municipal practice of firing or demoting public employees because of their political affiliations.[1] Plaintiffs are several members of the Chicago Police Department who held high-ranking positions in the force until defendant Harold Washington replaced Jane Byrne as Mayor of Chicago. Mayor Washington's newly-appointed Police Superintendent, defendant Fred Rice, demot-

---

1. This action is brought under 42 U.S.C. § 1983. Our jurisdiction is based on 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

ed each of the plaintiffs shortly after taking charge of the force. Count I of plaintiffs' amended complaint alleges that these demotions deprived them of property without due process, in violation of the Fourteenth Amendment. Count II alleges that Mayor Washington and Superintendent Rice demoted plaintiffs to punish them for not supporting the Mayor's 1983 campaign, thus violating their rights under the First and Fourteenth Amendments. Defendants ("the City") have moved to dismiss. For the reasons stated below, the motion to dismiss is denied.

### Facts

The following facts are taken largely from the allegations in the amended complaint, which we assume to be true for the purposes of this motion. Each of the plaintiffs held high positions in the police department. For example, plaintiff Auriemma was Commander of the Central Intelligence Unit. Plaintiff Considine was Director of the Crime Laboratory. Plaintiff Forberg was Commander of the Narcotics Section. Each plaintiff was demoted in late 1983 as part of what the amended complaint terms "massive demotions in the upper ranks of the Chicago Police Department."

Plaintiffs allege in Count I that they all had performed well in their jobs, that they had never been disciplined and that they all had received awards for their service. They further allege that Superintendent Rice demoted them without cause and without a hearing, contrary to a "long-standing custom and policy of the Police Department" that persons in plaintiffs' job categories be hired, fired, promoted, demoted or transferred solely on a merit basis. They conclude that their demotions without cause and a hearing violated their Fourteenth Amendment rights to due process of law.

Count II, in a sense, located the "cause" which was missing in Count I. Mayor Washington appointed Superintendent Rice, who is a political supporter of the Mayor. Plaintiffs allege that the Mayor directed the Superintendent to demote the plaintiffs, and that these demotions were intended to punish the plaintiffs for supporting mayoral candidates who opposed Mayor Washington in the 1983 campaign. Plaintiffs conclude that these politically motivated demotions violated their First and Fourteenth Amendment rights.

The City's motion to dismiss attacks the sufficiency of both counts in the amended complaint. We may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* —— U.S. ——, ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). With this standard in mind, we turn to the City's motion.

### The Procedural Due Process Claim

The City argues that the plaintiffs have alleged no protectible "property interest" in their jobs, and thus Count I fails to state a claim for relief under the Due Process Clause. It points out that each plaintiff held a position which was exempt from the City's so-called "Career Service" positions. "Career Service" employees are entitled by Ordinance to discharge or discipline only for cause following a hearing on the issue. Municipal Code of Chicago, §§ 25.1–5(12), 25.1–6. No such ordinance or statute limits termination of non-career service employees like plaintiffs. Because no statute or ordinance creates entitlement to retain plaintiffs' jobs, the City concludes that plaintiffs have no property interest in their former positions. *See, e.g., Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (to have a property interest, person must have legitimate claim of entitlement, arising out of State statute, rule or policy).

Before plaintiffs amended their complaint, we probably would have agreed with the City since the plaintiffs had alleged no legitimate, bilateral claim of entitlement to their former positions. But after receiving the City's motion to dismiss,

plaintiffs amended their complaint to allege that the police department had a "long-standing custom and policy" that people holding plaintiffs' jobs would be demoted or fired for cause only. We hold that this complaint as amended sufficiently alleges a "property interest" within the meaning of *Roth* and its progeny.

*Roth's* companion case, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), held that even if no state statute or contract creates a property interest in a job, a person may still enjoy a "property interest" for due process purposes if the interest stems from "mutually explicit understandings" between the person and the state employer. *Id.* at 601, 92 S.Ct. at 2699. A plaintiff may allege and prove that the state agency has promulgated an "unwritten 'common law'" of job tenure, which may be implied from "the policies and practices of the institution." *Id.* at 602–03, 92 S.Ct. at 2700; *see also, e.g., Amendola v. Schliewe,* 732 F.2d 79, 86 (7th Cir.1984); *Hadley v. County of Du-Page,* 715 F.2d 1238, 1241–42 (7th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984). Plaintiffs' allegation, that police department custom requires that job discipline be based on cause determined after a hearing, plainly satisfies the requirements of *Perry* for the purpose of surviving a motion to dismiss.[2]

The City tries to distinguish *Perry* by directing us to one of the Supreme Court's footnotes, which reads:

... If it is the law of Texas that a teacher in respondent's position has no contractual or other claim to job tenure,

the respondent's claim would be defeated.

408 U.S. at 602, n. 7, 92 S.Ct. at 2700. The City argues that unlike *Perry,* in this case explicit state law does apply to plaintiff's job tenure, in that city rules vest the Superintendent with discretion to reassign plaintiffs as he deems appropriate. *See* City of Chicago Personnel Rules, Rule III, § 2.[3] We disagree that this Rule, or other state laws granting the Superintendent wide discretion in personnel decisions,[4] defeats the *Perry* allegation of a custom of merit-based job decisions. The alleged custom could very well supplement rather than contradict the Rules. Simply because state law gives the Superintendent broad discretion does not imply that he could not use his discretion to create a custom of merit-based job decisions. If plaintiffs can prove that past Superintendents have exercised their discretion in a way to follow the alleged custom, they would satisfy *Perry. Cf. Soni v. Bd. of Trustees of the Univ. of Tennessee,* 513 F.2d 347 (6th Cir.1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976) (oral assurances that alien faculty member had *de facto* tenure satisfied *Perry* even though he had previously not been eligible under state law). In sum, because a set of facts can be proved consistent with the allegations and with *Perry,* the motion to dismiss Count I is denied.

## The Elrod-Branti Claim

The parties agree that two Supreme Court cases, *Elrod v. Burns,* 427 U.S. 347,

---

**2.** *See Begg v. Moffitt,* 555 F.Supp. 1344, 1348–49 (N.D.Ill.1983) (Marshall, J.) (allegations of police department customs and other informal, "mutually explicit understandings" withstand motion to dismiss); *Hermes v. Hein,* 511 F.Supp. 123 (N.D.Ill.1980) (Kocoras, J.) (allegation of unwavering municipal custom and stated policy satisfied *Perry*). While the allegations in *Hermes* survived a motion to dismiss, the case was ultimately dismissed on summary judgment and affirmed on appeal because the plaintiff did not prove any material facts to support the allegation of custom. *Hermes v. Hein,* 742 F.2d 350 (7th Cir.1984); *see also Hadley v. County of DuPage,* 715 F.2d 1238, 1242–43 (7th Cir.1983) (naked assertion of a custom of not firing em-

ployees without a hearing could not survive a motion for summary judgment). This case is similar to *Begg* or *Hermes* in 1980, since we are now only at the pleadings stage. We do not now express any opinion on the merits of the allegation of custom, and the plaintiffs will of course later have to support the allegation with facts in order to survive summary judgment.

**3.** This Rule provides, "[a]ppointments to Senior Executive Service positions are made at the discretion of the department head."

**4.** *See* Ill.Rev.Stat. ch. 24, ¶ 3–7–3.2 (1983).

96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), control our analysis of the sufficiency of Count II of the amended complaint. *Elrod* held that the newly elected sheriff of Cook County violated the First and Fourteenth Amendment rights of certain employees when he fired them "because they did not support and were not members of the Democratic Party and had failed to obtain the sponsorship of one of its leaders." 427 U.S. at 351, 96 S.Ct. at 2679. While the Judgment rested on two opinions, a majority of the Court agreed that "a nonpolicymaking, nonconfidential government employee can[not] be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs." *Id.* at 375, 96 S.Ct. at 2690 (opinion of Stewart, Blackmun, J.J., concurring in the judgment). This holding plainly implies that certain public employees—"policymaking" or "confidential" employees—can be fired for political reasons.

■ In *Branti* the Supreme Court reaffirmed *Elrod's* ban against broad political purges of public employees, but reformulated the test of who can be fired for political reasons:

In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

445 U.S. at 518, 100 S.Ct. at 1295; *see also Livas v. Petka,* 711 F.2d 798, 800 (7th Cir. 1983). Thus, a court must address two questions in an *Elrod-Branti* case. First, was the public employee discharged because of her political beliefs or affiliations? If so, has the "hiring authority" met its burden of showing that political loyalty is an appropriate job qualification.

As to the first question, the City asserts that the plaintiffs were demoted for nonpolitical reasons. This argument clearly lacks merit. Plaintiffs have alleged that

their demotions were politically motivated, and we must assume for this motion to dismiss that this allegation is true. The City might turn out to be right, but now is not the time to decide that.

Moving to the second question, the City argues that all the plaintiffs fall within the *Elrod-Branti* exception in that their political loyalty is an appropriate requirement for their former jobs. The City points out that city ordinance specifically defines plaintiffs' former positions as involving policymaking and confidentiality:

Senior Executive Service, consisting of positions which entail duties including city-wide or departmental level determinations of policy, or positions which entail their implementation of such policies.

Municipal Code of Chicago, § 25.1–3. The City also cites police department regulations which state that persons holding plaintiffs' former positions supervise, train and otherwise lead many other employees. While the plaintiffs no doubt shouldered a great amount of responsibility, we cannot say at this time that the City has met its burden of showing that the plaintiffs come within the *Elrod-Branti* exception.

■ Whether a public employee is a "policymaker" is largely a question of fact, which must be decided on a case-by-case basis. As the Supreme Court stated in *Branti:*

Under some circumstances, a position may be appropriately considered political even though it is neither confidential nor policymaking in character.... It is equally clear that party affiliation is not necessarily relevant to every policymaking or confidential position.

Thus, because of differences in the facts, an assistant public defender cannot be discharged for party affiliation, *Branti,* 445 U.S. at 519–520, 100 S.Ct. 1287, 1295, but an assistant state's attorney can be fired for political reasons. *Livas v. Petka,* 711 F.2d 798 (7th Cir.1983); *Mummau v. Ranck,* 531 F.Supp. 402 (E.D.Pa.), *aff'd,* 687 F.2d 9 (3d Cir.1982) (per curiam). A sheriff might properly be fired because of

politics, *Joyner v. Lancaster*, 553 F.Supp. 809 (M.D.N.C.1982), but a deputy sheriff may not be. *Barrett v. Thomas*, 649 F.2d 1193, 1200–01 (5th Cir.1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982).[5] It is relevant, but not enough for the City to cite some abstract regulations stating that plaintiffs belonged to a class of city employees which supervised other employees or promulgated some policies. The decision will ultimately turn on the idiosyncracies of each plaintiff's former position in an effort to determine whether "party affiliation is an appropriate requirement for the effective performance of" that particular public office.[6] It might be that all, none or some plaintiffs will enjoy *Elrod-Branti* protection. But those individual decisions will have to be based on more than the pleadings and a few general regulations.

 The City also argues that *Elrod* and *Branti* apply to discharges or threatened discharges, but not to the demotion which the plaintiffs allegedly suffered. The narrow holding of *Elrod* speaks to "discharges." 427 U.S. at 375, 96 S.Ct. at 2690 (concurring opinion) (emphasis added), but does not directly address weaker forms of reprisal. Nevertheless, *Elrod* and *Branti* may apply to plaintiffs' demotions.

*McGill v. Bd. of Education of Pekin Elementary School District No. 108*, 602 F.2d 774 (7th Cir.1979), presents an analogous situation. The plaintiff in *McGill* was a teacher who sued her employer, a school board, for transferring her to another school in retaliation for constitutionally protected speech. The school board argued that because she was only transferred—without loss of pay or seniority—rather than fired, she suffered no violation of her rights. The Seventh Circuit held that unlawful retaliation can take the form of

transfer rather than discharge, even without loss of pay or seniority. *Id.* at 780. "The test is whether the adverse action is likely to chill the exercise of constitutionally protected speech." *Id.* While *McGill* involved free speech rights, we do not think those rights can be distinguished in this context from the First and Fourteenth Amendment rights to political belief and affiliation which were protected in *Elrod* and *Branti.* Thus, a politically motivated demotion—which is harsher punishment than the lateral transfer in *McGill*—may fall within *Elrod-Branti* if it is "likely to chill" the exercise of the rights protected in *Elrod-Branti.*

 We are aware that the Fourth Circuit has considered whether *Elrod-Branti* embraces actions other than dismissal and reached a narrower conclusion than we do. *See Delong v. United States*, 621 F.2d 618 (4th Cir.1980). The plaintiff in *Delong* was reassigned and transferred for allegedly political reasons. While the Court extended *Elrod-Branti* to a "wider range of patronage burdens than threatened or actual dismissals," *id.* at 623, the Court confined the range to "substantial equivalent[s] of dismissal." *Id.* at 624. The relevant inquiry according to the Fourth Circuit is:

> whether the specific reassignment or transfer does in fact impose upon the employee such a Hobson's choice between resignation and surrender of protected rights as to be tantamount to outright dismissal.... It is obvious that not every reassignment or transfer can fairly be thought to have this quality.

*Id.* We agree with *Delong* that not every transfer or reassignment necessarily deserves *Elrod-Branti* protection, but we respectfully disagree that *Elrod-Branti* is confined to *de facto* dismissals. As the plurality in *Elrod* stated, "[r]ights are in-

---

5. For other examples, *see Gannon v. Daley*, 561 F.Supp. 1377, 1384 n. 20 (N.D.Ill.1983).

6. We agree with Judge Marshall, *see Gannon*, 561 F.Supp. at 1383, that the "appropriate requirement" test of *Branti* is vague. Judge Marshall refined the test as:

> Where an employee's discretion is sufficiently cabined so that his or her meaningful policy and administrative guidance comes from superiors, the Constitution prohibits political dismissals.

*Id.* We need not decide now whether to apply Judge Marshall's refinement or to try to refine the standard ourselves.

fringed both where the government fines a person a penny for being a Republican and where it withholds the grant of a penny for the same reason." 427 U.S. at 360 n. 13, 96 S.Ct. at 2683. While a majority of the Court might not extend *Elrod-Branti* to fines of a penny, we do believe it would do so to actions which might have some real "chilling" impact on employees. As the Seventh Circuit emphasized in *McGill,* the focus should not be on the type of job action *per se,* but on whether the transfer, demotion, pay cut, etc., is "likely to chill" protected rights. 602 F.2d at 780.[7]

 The City agrees that the *McGill* test is relevant, but argues that the demotions alleged in this case were not likely to chill *Elrod-Branti* rights. We disagree. Although the plaintiffs retain supervisory positions of substantial responsibility, they *were* demoted, and according to their affidavits, at least a few of the plaintiffs suffered serious cuts in pay. A demotion from a high-ranking position, coupled with a pay cut, is substantial and, we hold, "likely to chill" the *Elrod-Branti* rights of political thought and affiliation, assuming, of course, that plaintiffs can meet the other *Elrod-Branti* requirements discussed earlier.

### The Shakman Issue

One last issue remains to be disposed of. The plaintiffs argue that their positions were shielded from political demotions by the consent decree issued on June 20, 1983, in *Shakman v. Democratic Organization of Cook County,* No. 69 C 2145 (N.D.Ill.1983) (Bua, J.).[8] It is unclear what the thrust of plaintiffs' argument is. If they believe that the City has violated the terms of *Shakman* consent decree, then they must present that claim in the form of a contempt petition in that proceeding. If

the plaintiffs are asserting that the *Shakman* decree is res judicata, we agree with Judge Marshall that *Shakman* is not res judicata or collateral estoppel for separate actions brought under 42 U.S.C. § 1983 alleging *Elrod-Branti* violations. *Gannon v. Daley,* 561 F.Supp. 1377 (N.D.Ill.1983); *Gannon v. Daley,* 531 F.Supp. 287 (N.D.Ill. 1981). Therefore, the *Shakman* consent decree does not dispose of Count II of the amended complaint.

### Conclusion

For the reasons stated above, the City's motion to dismiss is denied. It is so ordered.

---

We note that other courts have assumed that *Elrod-Branti* applies to job actions less severe than dismissal; however, the courts in these cases were apparently never moved to address the issue squarely. *See DeLuca v. Sullivan,* 450 F.Supp. 736, 740 (D.Mass.1977) (failure to promote); *Miller v. Bd. of Educ. of County of Lincoln,* 450 F.Supp. 106 (S.D.W.Va.1978) (transfers, demotions and discharges); *Cullen v. New York State Civil Service Commission,* 435 F.Supp. 546, 552 (E.D.N.Y.1977) (failure to promote).

**8.** For a full discussion of the issues leading up to the Consent Decree, *see Shakman,* 481 F.Supp. 1315 (N.D.Ill.1979).