**Cory D. CHAN, Plaintiff,**

**v.**

**CITY OF CHICAGO, a municipality, the Chicago Police Department, an instrument of a municipality, LeRoy Martin, individually and in his capacity as Superintendent of the Chicago Police Department, Edward S. Wodnicki, individually and in his former capacity as Deputy Superintendent of the Chicago Police Department, Bureau of Investigative Services, Elgia Cook, individually and in his capacity as Chief of the Organized Crime Division, Ronald T. Moran, individually and in his former capacity as Commander of the Intelligence Section, and John Guarnieri, individually and in his capacity as a Lieutenant in the Intelligence Section of the Chicago Police Department and as the Lieutenant in charge of the Chicago Terrorist Task Force, Defendants.**

**No. 91 C 4671.**

United States District Court, N.D. Illinois, E.D.

Dec. 9, 1991.

Susan Bogart, Chicago, Ill., for plaintiff.

Patricia M. Carroll–Smit, City of Chicago, Law Dept., Corp. Counsel, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Before the court is the defendants' motion to dismiss the plaintiff's complaint. For the following reasons, the motion is granted in part and denied in part.

## FACTS

Plaintiff Cory D. Chan ("Chan") has been a Chicago police officer since 1973.[1] In July 1984, he was assigned to the Intelligence Section of the Chicago Police Department, Organized Crime Division, Bureau of Investigative Services ("Intelligence Section"). The following March, Chan began serving on the newly formed Chicago Terrorist Task Force ("Task Force"), a multi-agency group including the Intelligence Section, the Federal Bureau of Investigation, the U.S. Secret Service, and the Illinois State Police. Chan remained on the Task Force until he was transferred on August 14, 1989, at which time he was receiving $500 monthly in Authorized Uncontrollable Overtime and had use of an FBI-supplied car as a Task Force member. The only Chicago police officers eligible for the Task Force were in the Intelligence Section.

Chan alleges that he was transferred from the Task Force for asserting his Fifth Amendment right against self-incrimination before a federal grand jury on August 9, 1989. During his appearance before the grand jury, Chan was told that his testimony was sought in connection with alleged gambling activities in Chinatown. The federal gambling investigation bore no relation to Chan's duties with the Intelligence Section or the Task Force. Chan promptly reported to his police department superiors, as is required by police regulations, both his receipt of a grand jury subpoena in July 1989, and following his grand jury appearance, his assertion of Fifth Amendment privilege. Chan also reported that the grand jury investigation was unrelated to his police duties. On April 11, 1990, Chan testified under a grant of immunity before

---

1. The facts set forth herein are drawn from Chan's complaint.

the same federal grand jury before which he had earlier asserted the Fifth Amendment.

Chan was transferred from the Intelligence Section on August 14, 1989, and the next day was reassigned as a patrol officer in the 9th District working afternoon and night watches, which were inconsistent with his seniority and experience. Chan's FBI security clearance, required for Task Force members, was revoked on August 16, 1989.

A grievance pursuant to the collective bargaining agreement covering Chicago police officers was filed on Chan's behalf on August 16, 1989 by the Fraternal Order of Police. The collective bargaining agreement provided in part that "No officer covered by this Agreement shall be suspended, relieved from duty or disciplined in any manner without just cause." (Sec. 8.1) The agreement also barred discrimination in transfers or assignments based on race or national origin, among other factors. (Sec. 10.2) An arbitrator ruled in Chan's favor on August 20, 1990, ordering reinstatement of Chan to the Intelligence Section and payment of benefits lost as a result of his transfer from that section. The arbitrator, however, found he lacked the power to order Chan's reinstatement to the Task Force. Based on the arbitration ruling, Chan was immediately transferred back to the Intelligence Section but has not been paid for any lost benefits.

Chan brought this lawsuit on July 24, 1991. Count One of the complaint claims that the removal of Chan from the Intelligence Section and the Task Force for asserting his Fifth Amendment privilege violated his due process rights under the Fifth and 14th Amendments and 42 U.S.C. § 1983. Count Two alternatively claims that if the questions asked him by the grand jury were related to performance of his official police duties, his assertion of Fifth Amendment privilege was due to the ineffective assistance of his attorney, and therefore his removal from the Intelligence Section and Task Force violated his due process rights. Count Three alleges that Chan, being of Chinese ancestry, was treated differently from police officers not of Chinese ancestry who asserted their Fifth Amendment rights before the same federal grand jury, in violation of Chan's equal protection rights under the Fifth and 14th Amendments and § 1983.

Count Four claims that Chan was not provided with a hearing or opportunity to be heard prior to his allegedly punitive transfer in violation of his equal protection rights. Count Five, apparently under Illinois common law, asserts that Chan's transfer based on accusations of his untrustworthiness stigmatized him and damaged his reputation. Count Six claims that Chan's transfer was without due cause and therefore violated his rights under the collective bargaining agreement. Count Seven seeks punitive damages against the defendants for their alleged willful, unlawful, malicious and wanton disregard of Chan's rights and feelings.

The defendants' motion to dismiss contends that the entire complaint is defective because, among other reasons, it fails to allege any violation of a federal constitutional right as is required to state a claim under § 1983, that even if such a right were alleged, the individual defendants are entitled to qualified immunity, and the City of Chicago cannot be held liable because Chan does not adequately allege that a city policy or custom caused his alleged constitutional injury.

## DISCUSSION

 On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). The court, however, need not strain to find inferences favorable to the plaintiff which are not apparent on the face of the complaint. *Coates v. Illinois St. Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir.1977). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning

all material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus*, 603 F.2d 1266, 1269 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Dev. Co.*, 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transp. Servs., Inc.*, 795 F.2d 591, 594 (7th Cir.1986).

■ Counts One through Four of Chan's complaint allege constitutional violations under 42 U.S.C. § 1983. In support of these claims, Chan must show (1) an action taken under color of state law, (2) which caused a deprivation of a constitutionally protected right. *Brown v. City of Lake Geneva*, 919 F.2d 1299, 1301 (7th Cir.1990) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970)). Additionally, to establish municipal liability under § 1983, Chan must show that the City of Chicago caused the deprivation through operation of an unconstitutional city policy or custom, *Woods v. Michigan City*, 940 F.2d 275, 277 (7th Cir.1991) (citing *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978)), or as a result of inadequate training or supervision which amounted to deliberate indifference toward constitutional protections. *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1100–01 (7th Cir.1990) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–92, 109 S.Ct. 1197, 1204–06, 103 L.Ed.2d 412 (1989)). The same requirements apply to claims against the individual defendants in their official capacities, which are effectively claims against the city. *Perkins v. Silverstein*, 939 F.2d 463, 469 (7th Cir.1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985)).

■ Under *Monell*, municipal liability only attaches when a municipal official or employee's "acts or edicts may fairly be said to represent official policy." *Woods*, 940 F.2d at 278 (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037). That can only occur when "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986)). Whether a particular official has such authority is a question of state law. *Id.* at 279 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988)).

■ Chan does not allege that he was transferred pursuant to a formal municipal policy, but rather that he was transferred in violation of a formal policy, embodied in the police collective bargaining agreement. The only official whom Chan specifically alleges had final policymaking authority is Police Superintendent LeRoy Martin. Chan does not allege that Martin ordered the allegedly unconstitutional transfer. Therefore, regardless of whether Martin actually had such authority, the transfer was not the direct result of any municipal policy or custom.

Nonetheless, municipal liability could result if the transfer was caused by a municipal policymaker's "deliberate indifference." To plead a deliberate indifference claim adequately, Chan must allege facts showing that his transfer resulted from deficiencies in police procedures "*so obvious, and the inadequacy so likely to result in the violation of constitutional rights*, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Graham*, 915 F.2d at 1101 (emphasis in original) (quoting *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1205).

Here again, Chan's allegations fall short. Chan has alleged a single incident, his transfer, rather than a repeated, continuing type of problem which a municipal policymaker could or should have corrected in time to prevent Chan's alleged injury. There is also no identification of a specific gap in police procedures which should have been filled to prevent easily foreseeable constitutional violations. *See Gibson v.*

*City of Chicago*, 910 F.2d 1510, 1521 (7th Cir.1990).

Chan's allegations are therefore insufficient to state a municipal liability claim either caused by a municipal policy or custom or by the deliberate indifference of a municipal policymaker. Consequently, the City of Chicago is dismissed as a defendant and the official capacity claims against the individual defendants are dismissed.

■ The Chicago Police Department is also dismissed, with prejudice, because it has no separate legal existence apart from the City of Chicago, and the department is therefore not a suable entity. *Reese v. Chicago Police Dept.*, 602 F.Supp. 441, 443 (N.D.Ill.1984).

■ The defendants raise a number of additional arguments which require a closer look at Chan's claims. Counts One and Two allege alternative substantive due process violations based on Chan's transfer from the Intelligence Section and Task Force. Chan claims he had a property interest in his Intelligence Section and Task Force positions, of which Chan was deprived unconstitutionally as punishment for his assertion of the Fifth Amendment before the federal grand jury. Count One alleges that the grand jury inquiry was unrelated to Chan's official duties. Count Two alternatively alleges that, in the event the grand jury inquiry is found to have been related to Chan's official duties, his assertion of the Fifth Amendment was not "knowing, intelligent and wilful" but was rather the result of ineffective assistance of counsel.

■ It is well established that a police officer cannot be dismissed for refusing on Fifth Amendment grounds to answer a grand jury's questions unless those questions pertained "specifically, directly, and narrowly" to performance of the officer's official duties. *Gardner v. Broderick*, 392 U.S. 273, 278–79, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968); *Confederation of Police v. Conlisk*, 489 F.2d 891, 895 (7th Cir.

1973), *cert. denied sub nom. Rochford v. Confederation of Police*, 416 U.S. 956, 94 S.Ct. 1971, 40 L.Ed.2d 307 (1974)). Chan, however, was not dismissed. He allegedly was transferred to a less desirable assignment with less benefits, in effect a demotion. Nonetheless, the Supreme Court has held "that government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized." *Lefkowitz v. Cunningham*, 431 U.S. 801, 806, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977). "[D]irect economic sanctions and imprisonment" are not the only forbidden penalties. *Id.*

The Seventh Circuit has expressed doubt that a lateral transfer without a pay cut could ever constitute a sufficient deprivation to violate the 14th Amendment due process clause. *Greenberg v. Kmetko*, 840 F.2d 467, 475 (7th Cir.1988) (citing *Parrett v. City of Connorsville*, 737 F.2d 690, 693 (7th Cir.1984), *cert. dismissed*, 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985)). Nonetheless, that court found it proper for a jury to decide whether transfer to an undesirable position constituted a constructive demotion.[2] *Id.* Here, Chan has alleged a violation of the Fifth Amendment, and has adequately alleged a demotion or constructive demotion: transfer to a less desirable position with loss of overtime pay and car-use benefits. Count One therefore adequately pleads a Fifth Amendment substantive due process violation.

■ Count Two, however, is defective. If the grand jury inquiry related to Chan's official duties, the City could constitutionally discipline him for his Fifth Amendment assertion. Chan offers no explanation or support for his novel assertion that his transfer would still be unconstitutional because he received ineffective assistance of counsel when he asserted the Fifth Amendment. An ineffective assistance of counsel claim that satisfies the requirements of *Strickland v. Washington*, 466 U.S. 668, 687–97, 104 S.Ct. 2052, 2064–70, 80 L.Ed.2d

---

**2.** A transfer to a undesirable position has also been described as a "lateral arabesque." *Greenberg v. Kmetko*, 922 F.2d 382, 383 (7th Cir.1991)

(citing Laurence J. Peter and Raymond Hull, *The Peter Principle*, 38–39 (1969)).

674 (1984), could entitle Chan to relief from a criminal conviction or sentence. Chan offers no basis to extend the potential relief to his employment situation. Count Two is therefore dismissed.

■ The defendants contend that they are entitled to qualified immunity because it was not clearly established at the time of Chan's transfer that it was unconstitutional. Public officials who perform discretionary functions are entitled to qualified immunity from civil liability to the extent their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Upton v. Thompson*, 930 F.2d 1209, 1211–12 (7th Cir.1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). A "clearly established" right must have been "particularized"—"the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1212 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

The right at issue here was sufficiently particularized by August 1989, the time of Chan's transfer, to hold the individual defendants liable if they are found to have violated that right. *Gardner*, 392 U.S. 273, 278–79, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968), and *Lefkowitz*, 431 U.S. 801, 806, 97 S.Ct. 2132, 2136, 53 L.Ed.2d 1 (1977), clearly established that no adverse actions could be taken against police officers for asserting the Fifth Amendment in inquiries unrelated to their official duties. Retaliatory transfers were held to violate the First Amendment in *McGill v. Board of Educ.*, 602 F.2d 774, 780 (7th Cir.1979). *See Greenberg v. Kmetko*, 922 F.2d 382, 385 (7th Cir.1991) (proper treatment of "lateral arabesque" made "apparent" in *McGill*). A reasonable person should have known at least by *McGill* that a police officer could not be transferred for asserting his Fifth Amendment rights. The defendants are therefore not entitled to qualified immunity from the claim asserted in Count One.

■ Counts Three and Four allege equal protection violations based on unequal treatment between Chan and police officers of non-Chinese ancestry. To plead an equal protection claim, Chan must allege that because of his membership in a particular class, the defendants intentionally treated him differently from similarly situated police officers who were not class members. *Sims v. Mulcahy*, 902 F.2d 524, 538 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). In Count Three, Chan alleges that, in contrast to his transfer, police officers not of Chinese ancestry who asserted the Fifth Amendment before the same federal grand jury as did Chan were not transferred or otherwise disciplined in any manner. He does not, however, allege that he was transferred because of his Chinese ancestry, and therefore the class-based motivation element is lacking. Count Three is dismissed.

Count Four alleges that Chan was "actually and constructively disciplined" without prior notice and an opportunity to be heard, which could partially support a procedural due process claim. That count, however, asserts a Fifth and 14th Amendment equal protection claim, but lacks the necessary elements for such a claim. Count Four is therefore dismissed.

■ Count Five is similarly deficient. It alleges that Chan suffered "a severe stigma on his professional and personal reputation" which destroyed his future prospects in law enforcement and spurred his decision to pursue another profession. The count is vague and does not specify what type of claim it asserts or the law under which the claim is asserted. It therefore fails to satisfy the pleading requirements of Fed.R.Civ.P. 8(a)(2) and is dismissed.

■ Count Seven alleges that the defendants' violations of Chan's rights, as set forth in prior counts, were committed "willfully, unlawfully, maliciously and in wanton disregard of the rights and feelings of

plaintiff" and seeks punitive damages. The count, however, fails to state a specific cause of action or legal authority allowing for punitive damages. Count Seven is therefore dismissed for failure to comply with Rule 8(a)(2).

The court reserves its ruling on the motion to dismiss as it pertains to Count Six, a pendent state claim for breach of contract.

## CONCLUSION

For the above reasons, the City of Chicago, the official capacity claims against the individual defendants, and Counts Two, Three, Four, Five and Seven of the complaint are all dismissed without prejudice. The Chicago Police Department is dismissed with prejudice.

IT IS SO ORDERED.