Kenneth E. CRANE, Plaintiff,

v.

Andrew N. YURICK, II, Gloucester County Prosecutor's Office, et al., Defendants.

Civil Action No. 00–6204(JEI).

United States District Court, D. New Jersey.

Oct. 28, 2003.

 

D'Alfonso and Camacho, P.A. by Mario J. D'Alfonso, Esq., Cherry Hill, NJ, for Plaintiffs.

Hahn & Howarth, Esqs. by Jerald J. Howarth, Esq., Parsippany, NJ, for Defendants.

## OPINION

IRENAS, Senior District Judge.

Presently before the Court is Defendants' Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below, we will grant Defendants' Motion as to Plaintiff's 42 U.S.C. § 1983 due process, New Jersey State Constitution free speech, tortious interference and slander and defamation claims, but deny Defendants' motion as to Plaintiff's 42 U.S.C. § 1983 First Amendment and New Jersey Conscientious Employee Protection Act claims.

### I.

The present case comes to us as a dispute between the Plaintiff, Kenneth E. Crane ("Plaintiff", "Crane"), formerly a detective in the Gloucester County Prosecutor's Office, and the Defendant, Andrew N. Yurick, II ("Defendant", "Yurick"), the Gloucester County Prosecutor. Crane argues that he was wrongfully terminated from his position in the Prosecutor's Office on August 13, 1999. While the Complaint is not a model of clarity, Plaintiff effectively brings six claims against Defendants—the first two under 42 U.S.C. § 1983, and the latter four under New Jersey State Law.

On or about August 13, 1999, Plaintiff Crane was terminated from his position as a detective in the Gloucester County Prosecutor's Office by Defendant Yurick. Crane had been working in the Prosecutor's Office for 11 years prior to that date. Throughout his career with the Prosecu-

tor's Office, Plaintiff had been an active member in the Policemen's Benevolent Association ("PBA") Local Union # 122, where he maintained a position as a union representative and was directly involved in contract negotiations.

During contract negotiations in May, 1999, Yurick obtained and read a sealed union letter that contained contract negotiations from Crane's unit. The union subsequently called a meeting to discuss the possibility of filing charges against Yurick. Though the vote to file charges failed, Crane voted for the filing of charges at the meeting and was outspoken in support of his position.

In June, 1999, Crane was transferred from his Major Crimes unit to the Grand Jury unit, a transfer that he viewed as a demotion. Crane's attempts to discuss this transfer with Yurick were unsuccessful. Subsequent to the transfer, Crane was again involved in contract negotiations in which he was critical of Yurick, and Crane then made inquiries to the Attorney General's Office regarding possible employment violations by Yurick.

On August 13, 1999, Crane's employment with the Prosecutor's Office was terminated. In response, Crane instituted the present action, in which he brings six claims: (1) denial of procedural due process pursuant to 42 U.S.C. § 1983; (2) violation of First Amendment rights pursuant to 42 U.S.C. § 1983; (3) violation of the New Jersey Conscientious Employee Protection Act; (4) violation of the free speech and expression provisions of the New Jersey State Constitution; (5) tortious interference with economic advantage; and (6) slander and defamation.[1] We grant Defendants' summary judgment motion on all but the second and third claim.

## II.

Under Fed.R.Civ.P. 56(c) a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. Where the moving party has carried its initial burden of demonstrating the absence of a genuine issue of material fact, "its opponent must do

---

1. Plaintiff joins an Equal Protection claim to his § 1983 due process claim, however the facts to support such an argument simply do not exist in this case. As the Equal Protection claim raised in Plaintiff's Complaint goes unaddressed in any of the parties subsequent submissions to this Court, we grant Defendants' summary judgment motion on this point as well.

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987)(Becker, J., concurring).

### III.

Plaintiff's first claim under 42 U.S.C. § 1983 alleges that his termination constituted a deprivation of procedural due process under the Fourteenth Amendment.[2] It is well-settled that, "the requirements of . . . due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). We find that Plaintiff could not have suffered the deprivation of a cognizable property or liberty interest necessary to sustain his procedural due process claim, and consequently grant Defendants' summary judgment motion on this issue.

### A.

Because his employment was at-will, Plaintiff has not sustained the deprivation of a property interest necessary to advance a Fourteenth Amendment procedural due process claim. It is well established that "there is generally not a property interest in continued public employment unless a claimant can demonstrate a legitimate claim of entitlement to it." *Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir.2001); *see also Latessa v. New Jersey Racing Commission*, 113 F.3d 1313, 1318 (3d Cir.1997)("To have a property interest in a job or a job benefit, an employee must have a legitimate claim of entitlement, not just a unilateral expectation."). In fact, "the Supreme Court has held that a public employee who has no statutory or contractual entitlement to his job has no property interest. Thus, an employee hired at-will . . . may not prevail on a claim that the loss of employment constituted a deprivation of property." *Battaglia v. Union County Welfare Board*, 88 N.J. 48, 56, 438 A.2d 530 (1981).

N.J.S.A. 2A:157–10 establishes Plaintiff as an at-will employee. It reads, in relevant part: "The prosecutor may appoint . . . county investigators to serve at his pleasure and subject to removal by him.[3]" Plaintiff, however, contends that

---

**2.** Plaintiff rather loosely alleges substantive due process violations alongside procedural due process violations in his Complaint. However, not all property interests entitled to procedural due process are protected by the substantive due process clause. *Nicholas v. Pennsylvania State University*, 227 F.3d 133, 140 (3d Cir.2000). Whether the property interest falls under the ambit of substantive due process protection depends on whether that interest is fundamental under the Constitution. *Id.*

In *Nicholas*, the Third Circuit held that tenured public employment is not a fundamental property interest entitled to substantive due process protection. *Id.* at 142. Sim-

ilarly, in *McCullough v. City of Atlantic City*, the Court found that damages from lost pay and benefits were also not afforded substantive due process protection. 137 F.Supp.2d 557, 566 (D.N.J.2001). Plaintiff's claimed property interest in this case—an alleged contractual entitlement that he be fired only for cause—falls directly in between *Nicholas* and *McCullough*, and therefore is also not a fundamental property interest protected by substantive due process.

**3.** The full text of N.J.S.A. 2A:157–10 reads:

In addition to the office of county detective, there is created in the office of the prosecutor the office of position of county investigator

the terms of the collective bargaining agreement between the Prosecutor's Office and PBA Local # 122, in addition to the *Prosecutor's Office Standard Operating Procedures*, grant him a contractual entitlement in his position.[4] The issue, therefore, is whether Plaintiff's contractual entitlements survive in the wake of the statutory authority granted to the Prosecutor by N.J.S.A. 2A:157–10. We find that they do not.

In *Roth,* the Supreme Court wrote that, "property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. Therefore, any contractual entitlement that the collective bargaining agreement or standard operating procedures purport to create would be invalid under N.J.S.A. 2A:157–10, and no property interest would exist. Additionally, the objective language of the contract and the subjective understanding of an employee are irrelevant as each employee in the public service is presumed to have accepted his or her position with, "full knowledge of the law." *Walsh v. State of New Jersey,* 290 N.J.Super. 1, 674 A.2d 988, 996 (1996)(Skillman, J., dissenting)(citing *Shalita v. Township of Washington,* 270 N.J.Super. 84, 636 A.2d 568, 571 (1994)); *rev'd by Walsh v. State of New Jersey,* 147 N.J. 595, 689 A.2d 131 (1997)(adopting Judge Skillman's dissent as the opinion of the Court).

The New Jersey Supreme Court, in *Golden v. County of Union,* found that statutes such as N.J.S.A. 2A:157–10 "unambiguously create an at-will employment relationship," and that such relationships are not, "*ipso facto* contractual in character . . . but [are] instead controlled by the statutes pursuant to which the public official has been appointed." 163 N.J. 420, 427–30, 749 A.2d 842 (2000). It continued, "in view of the clear statutory language establishing plaintiff's at-will employment status, it is not necessary for us to address whether a public agency may be bound by an implied contract or whether the manual here represented such a contract. The statute trumps whatever implied contract may have existed between the parties." *Id.* at 431, 749 A.2d 842.

Further evidence of N.J.S.A. 2A:157–10's central role in defining Plaintiff's employment as at-will comes from the union contract between the Prosecutor's Office and PBA Local # 122. Though Plaintiff argues that the collective bargaining agreement prevents his termination for anything but just cause, the agreement also makes specific reference to N.J.S.A. 2A:157–10. Article XXV, "Acknowledgment of Status and Rights," reads as follows: "Employees acknowledge that a Prosecutor's Detective is the equivalent, both professionally and legally, of a Coun-

---

which shall be in the unclassified service of the civil service. The prosecutor of each of the several counties of this state may appoint such number of suitable persons not in excess of the number and at salaries not less than the minimal amounts in this act provided to and be known as county investigators to serve at his pleasure and subject to removal by him and to assist the prosecutor in the detection, apprehension and arrest and conviction of offenders against the law. The person so appointed shall possess all powers and rights and shall be subject to the obligations of po-

lice officers, constables and special deputy sheriffs in criminal matters.

**4.** The *Gloucester County Personnel Policies and Procedure Manual* reads:

> G. Management Rights
> 1. Policy
> a. The County hereby retains and reserves unto itself . . . the following rights:
> (3) To layoff, suspend, demote, discharge, or take other disciplinary action for good and just cause, according to law;

ty investigator, pursuant to N.J.S.A. 2A:157–10." Agreement Between the Gloucester County Prosecutor and the PBA Local # 122, ¶ 25. We therefore find that Plaintiff's employment with the Prosecutor's Office was at-will, and did not confer any cognizable property interest on Plaintiff sufficient to support a procedural due process claim.

**B.**

Plaintiff also states a second procedural due process claim, that his termination from the Prosecutor's Office deprived him of a liberty interest. Specifically, Plaintiff contends that his termination left him without employment and made it more difficult for him to find subsequent employment.

█ In fact, the Supreme Court has found in some cases that a detrimental employment action can be a deprivation of a liberty interest protected by the Due Process Clause:

> Without a doubt, [the liberty guaranteed by the 14th Amendment], denotes not merely freedom from bodily restraint but also the right of the individual to contract, engage in any of the occupations of life … as essential to the orderly pursuit of happiness by free men.

*Roth*, 408 U.S. at 572, 92 S.Ct. 2701 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). However, the Due Process Clause protects a right to general employment, not specific employment. "It is the right to pursue a calling or occupation, and not the right to a specific job that is protected by the 14th Amendment." *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir.1994).

█ In order to establish a deprivation of a protected liberty interest, Plaintiff must show that Defendants' actions "imposed on [him] a stigma or other disability that foreclosed [his] freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 574, 92 S.Ct. 2701. On November 20, 2000, Plaintiff began working for the Division of Criminal Justice as a state investigator. Defendant's Ex. D. Any argument, therefore, that Plaintiff has been foreclosed from practicing an occupation is belied by his resumption of employment approximately one year and three months from his termination from the Prosecutor's Office. Plaintiff does not state a claim to a protected liberty interest, and we consequently grant Defendants' summary judgment motion on his procedural due process claim.

**IV.**

Plaintiff asserts, as his second federal claim, that Defendants' decision to terminate his employment with the Prosecutor's Office was retaliatory, in violation of his First Amendment rights as protected by 42 U.S.C. § 1983. Defendants argue that the facts presented are insufficient to support such a claim. On this point, we agree with Plaintiff, and deny summary judgment, finding that there are still triable issues of fact.

█ A public employee's retaliation claim for engaging in a protected activity is evaluated under a three-part test: (1) Plaintiff must establish that he engaged in speech or an activity protected by the First Amendment, and in order for speech to be protected, it must relate to a matter of public concern; (2) Plaintiff must show that the protected speech was a substantial or motivating factor in the alleged retaliatory action; and (3) the public employer can refute the claim by showing that it would have taken the same action even in the absence of the protected speech. *See Baldassare v. State of New Jersey*, 250 F.3d 188, 194–95 (3d Cir.2001); *Suppan v.*

*Dadonna,* 203 F.3d 228, 235 (3d Cir.2000). We evaluate each element of the test in turn.

### A.

▮▮▮ Plaintiff easily satisfies the first element of the retaliation test, as his union-related speech is protected under the First Amendment. For speech to be protected, it must involve a matter of public concern. *Azzaro v. County of Allegheny,* 110 F.3d 968, 975 (3d Cir.1997). Speech addresses a matter of public concern when it can be reasonably related to "any matter of political, social or other concern to the community." *Watters v. City of Philadelphia,* 55 F.3d 886, 892 (3d Cir.1995).

▮▮▮ In this case, Plaintiff's speech involved a central union activity, the negotiation of a new collective bargaining agreement, and an event central to that negotiation, the inappropriate interception and reading, by Defendant Yurick, of a sealed letter regarding the contract.[5] This action directly implicates one of the most recognized First Amendment protections—union-related speech. The First Amendment's protection of the right to freedom of speech extends broadly over union activities. *See Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945); *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Hotel & Restaurant Employees & Bartenders International Union Local 54 v. Read,* 832 F.2d 263, 265 (3d Cir.1987). Further, "speech arising in the context of union organization efforts has long been held to be a matter of public concern." *McGill v. Board of Education,* 602 F.2d 774, 778 (7th Cir.1979). *See also Cafeteria Employees Union v. Angelos,* 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58 (1943); *Senn v. Tile Layers Protective Union,* 301 U.S. 468, 57 S.Ct. 857, 81 L.Ed. 1229 (1937). Plaintiff's speech clearly related to his union activities, as it involved contract negotiations, and it was also clearly a matter of public concern. Therefore, Plaintiff passes the first element of the *Baldassare* test.

### B.

The second element of the test, determining whether Plaintiff's speech was a substantial factor in Defendants' retaliatory action, represents the crux of the disagreement between the parties. Plaintiff contends, through anecdotal and circumstantial evidence, he was terminated as a result of his union speech and related activities, while Defendants argue that Plaintiff's evidence is insufficient to support such a connection. We find, at this early stage, that Plaintiff at least creates suspicion as to Defendants' retaliatory motive— enough suspicion to defeat Defendants' summary judgment motion.

▮▮▮ Plaintiffs correctly note that temporal proximity between two events may create a causal inference. "Protected conduct closely followed by adverse action may justify an inference of retaliatory motive." *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir.1998)(*citing Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir.1996)). Plaintiff's transfer from the Major Crimes Unit to the Grand Jury Unit, not long after expressing dissatisfaction with Defendant Yurick's actions, raises a reasonable inference of causation. We are more skeptical of the arrest that Plaintiff was not permitted to 'ride-along' with, though it also matches chronologically with union votes Plaintiff made against Yurick's interest.

Plaintiff's termination, however, occurred shortly after he made inquiries to

---

**5.** We note that at no point in this matter has Defendant Yurick disputed Plaintiff's description of his actions with regard to intercepting the sealed letter.

the Attorney General as to possible employment violations by Defendant Yurick. Though we recognize here that Yurick expressly denied any knowledge of Plaintiff's discussions with the Attorney General in his deposition, we believe that this matter should be considered by a jury, and is inappropriate for summary judgment disposition. Plaintiff's termination reasonably raises the inference that he was being punished for his union activities. Accordingly, we find that his claim passes the second element of the *Baldassare* test.

## C.

The third element of the test permits Defendants to argue that Plaintiff was terminated for reasons unrelated to the speech at issue. However, Defendants have made no such argument to this point. Defendants have steadfastly refused to give any reasons for Plaintiff's termination. In fact, when directly asked about the reasons for Plaintiff's termination, Yurick specifically declined to comment. Kim Benn, *Detective's Firing Contested,* GLOUCESTER COUNTY TIMES, October 13, 1999, at A1, A4. Therefore, at this stage, we find that Plaintiff satisfies the third *Baldassare* element, and may proceed with his retaliatory termination claim under 42 U.S.C. § 1983 and the First Amendment.

## V.

Plaintiff also argues that Defendants violated N.J.S.A. 34:19–1, the New Jersey Conscientious Employee Protection Act ("CEPA"). Here too, we deny Defen-

dants' motion for summary judgment, finding that issues of material fact remain on this claim.

CEPA was enacted in 1986 to protect public employees who "blow the whistle" on governmental agencies or other employees engaged in wrongful conduct from retaliatory action.[6] *Abbamont v. Piscataway Township Bd. of Educ.,* 138 N.J. 405, 650 A.2d 958, 964 (1994). The Third Circuit has recognized a three-element test for analyzing CEPA claims. A Plaintiff must show: (1) that he disclosed or threatened to disclose the disputed activity to a public body; (2) that he suffered an adverse employment action; and (3) a causal connection between the two. *See Fioriglio v. City of Atlantic City,* 996 F.Supp. 379, 393 (D.N.J.1998).

This test, of course, is nearly identical to the First Amendment analysis which appeared above, and courts commonly treat them similarly. *See Sunkett v. Misci,* 183 F.Supp.2d 691 (D.N.J.2002); *McCullough v. City of Atlantic City,* 137 F.Supp.2d 557 (D.N.J.2001). We also apply our First Amendment analysis to Plaintiff's CEPA claim, and reach the same result. Triable issues of fact remain, particularly as to the third element of the test, and we deny Defendants' summary judgment motion on this issue.

## VI.

Plaintiff next claims a violation of the free speech provisions of the New Jersey State Constitution. In granting Defen-

---

**6.** The relevant text of N.J.S.A. § 34:19–3 reads:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably

believes is in violation of a law, or a rule or regulation promulgated pursuant to law . . .;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship.

dants' summary judgment motion on this point, we refer Plaintiff back to the text of CEPA itself:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under common law.

N.J.Stat.Ann. § 34:19–8.

The New Jersey Supreme Court considered the scope of this waiver provision and wrote:

> [O]nce a CEPA claim is "instituted," any rights or claims for retaliatory discharge based on a contract of employment; collective bargaining agreement; State law, whether its origin is in the Legislature, the courts, the common law or rules of the court; or regulations or decisions based on statutory authority, are all waived.

*Young v. Schering Corp.*, 141 N.J. 16, 660 A.2d 1153, 1160 (1995).

▇▇▇ Plaintiff's New Jersey State Constitution claim falls squarely within the waiver exception provided by CEPA, as it is a claim based in state law, and Plaintiff is therefore not entitled to raise it. *See Baldassare v. State of N.J.*, 250 F.3d 188, 202 (3d Cir.2001)(dismissing a New Jersey State Constitutional free speech claim as waived by a parallel CEPA claim). We

grant Defendants summary judgment motion on this point.

## VII.

▇▇▇ We next consider Plaintiff's claim that Defendants tortiously interfered with his business activities; namely, his failure to find new employment for one year and three months after his termination.[7] The Supreme Court of New Jersey has identified a four-element test for evaluating tortious interference claims: (1) a reasonable expectation of economic advantage to plaintiff; (2) interference done intentionally and with malice; (3) causal connection between the interference and the loss of prospective gain; and (4) actual damages. *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 563 A.2d 31 (N.J.1989).

We need only address the third element of the test here, for Plaintiff's failure to establish the causal connection between Defendants' actions and his loss of prospective gain defeats his claim. Claims for tortious interference with business activities that involve former and prospective employers take a common form. Usually, the former employer of the terminated employee makes a special effort to contact individual prospective employers in an attempt to deter them from hiring the plaintiff. *See* W. PAGE KEETON, DAN B. DOBBS, ROBERT E. KEETON & DAVID G. OWEN, PROSSER AND KEETON ON TORTS § 130 (5th ed.1984); 2 HENRY H. PERRITT, JR., EMPLOYMENT DISMISSAL LAW AND PRACTICE § 7.43 (4th ed.1998). Plaintiffs in these cases can allege specific interference with a particular prospective employer that was directly contacted by the former employer.

---

7. Though we fully analyze this claim we note that Plaintiff has also waived his right to it by instituting his CEPA claim. *Baldassare* considered a similar situation—a CEPA Plaintiff who had added a tortious interference claim. The *Baldassare* court dismissed the tortious interference claim, finding that it was a state law claim arising out of the same set of facts as the CEPA claim, and CEPA prohibits litigating repetitive claims. *Baldassare*, 250 F.3d at 202. We believe that the same logic applies here, however, we dispose of Plaintiff's tortious interference claim on other grounds.

■ Plaintiff's tortious interference claim does not follow this pattern, and therein lies its weakness. Plaintiff would have Defendants' alleged actions apply to the universe of potential employers, absent any specific action. Further, Plaintiff also argues that Defendants' silence as to the reasons for his termination did more to harm his employment prospects than specific comments, raising an inference of incompetence or inappropriate behavior in the mind of any prospective employer. Taken together, these arguments reduce to one essential, unsupportable position: that any terminated at-will employee can sustain a cause of action against a former employer when he has trouble finding a new job.[8]

It is generally accepted that a terminated employee looking for a new position will have to explain the facts surrounding his departure from a prior job to a new employer. Put more simply, a future employer's suspicion about an applicant's dubious job history is not actionable, especially where the former employer made no special effort to communicate any detrimental information. There is simply no legal claim inherent in a circumstance so common.

We find that Plaintiff cannot establish a causal connection between his failure to find employment for a period of one year and three months and any actions of the Defendants. Plaintiff fails the third element of the New Jersey tortious interference test quite clearly. We therefore decline to consider the other three elements and grant Defendants motion for summary judgment on this issue.

## VIII.

Finally, Plaintiff alleges slander and defamation against Defendants. Though this claim as plead is also prohibited, as it is a state law claim arising from the same set of facts as Plaintiff's CEPA claim, we need not elaborate the point because the slander and defamation claim is not timely.[9] It is barred by the statute of limitations under New Jersey State law. Pursuant to N.J.S.A. 2A:14–3, actions at law for libel or slander must be commenced within one year of the alleged libel or slander.[10]

Here, the allegedly slanderous and defamatory remarks were published in a *Gloucester County Times* article on October 13, 1999. Plaintiff's initial complaint in this matter was filed on December 26, 2000, more than one year after the article's date. The claim is therefore barred by the statute of limitations, and Defendants' summary judgment motion on this point is granted.

An appropriate order will be entered on the date herewith.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter having come before the Court on the Motion of Defendants, Andrew N. Yurick, II, and Gloucester County

---

**8.** We also note here that, as explained earlier, Defendants had the statutory right to terminate Plaintiff's employment at any time and without cause, pursuant to N.J.S.A. 2A:157–10.

**9.** To evaluate whether a defamation claim can exist alongside a CEPA claim, we look to the facts underlying both claims. Where the claims are based on sufficiently similar underlying facts, the defamation claim cannot proceed. Here, Plaintiff's Complaint refers specifically to the same set of facts for both his CEPA and defamation allegations. Pl. Comp. 9–10. We are therefore confident that the defamation claim would be barred under N.J.S.A. § 34:19–8.

**10.** N.J.S.A. 2A:14–3 reads:

Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander.

Prosecutor's Office, for Summary Judgment, pursuant to Fed.R.Civ.P. 56, Mario J. D'Alfonso, Esq., D'ALFONSO and CAMACHO, P.A., appearing on behalf of Plaintiff, Kenneth E. Crane, Jerald J. Howarth, Esq., HAHN & HOWARTH, ESQS., appearing on behalf of Defendants, Andrew N. Yurick, II, and Gloucester County Prosecutor's Office; and,

The Court having considered the submissions of the parties;

For the reasons set forth in the Opinion filed concurrently with this Order;

**IT IS,** on this 28th day of October, 2003, hereby **ORDERED** that:

1. The Motion of Defendants, Andrew N. Yurick, II, and Gloucester County Prosecutor's Office, for Summary Judgment on Plaintiff's: (1) 42 U.S.C. § 1983 due process and equal protection claims; (2) New Jersey State Constitution free speech claim; (3) tortious interference claim; and (4) defamation claim is **GRANTED.**

2. Defendants' Summary Judgment Motion on Plaintiff's 42 U.S.C. § 1983 First Amendment claim and New Jersey Conscientious Employee Protection Act claim is **DENIED.**